NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH WOHL o/b/o STEVEN WOHL, | Civil Action No.: 2:15-cv-02478 (CCC) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**CECCHI, District Judge.**

## I.  INTRODUCTION

Before the Court is Deborah Wohl's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying Steven Wohl's application for disability benefits ("DIB") under §§ 216(i) and 223(d) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

## II.  BACKGROUND

### A.  Procedural Background

Plaintiff brings this claim on behalf of her deceased husband, Steven Wohl. (Tr.[1] at 8). Mr. Wohl applied for DIB on February 27, 2012, alleging disability as of on August 20, 2005. (Id.

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 5).

1

at 225). He later amended the alleged onset date to January 1, 2008. (Id. at 228). Mr. Wohl's DIB claim was denied initially on June 11, 2012, and upon reconsideration on November 23, 2012. (Id. at 22). On November 14, 2013, a hearing was held before ALJ Michal L. Lissek. (Id. at 40-60). A supplemental hearing was held on March 5, 2014. (Id. at 61-83). ALJ Lissek issued a decision on April 30, 2014 finding Mr. Wohl was not disabled as defined by the SSA at any time from January 1, 2008, the alleged onset date, through December 31, 2008, the date Mr. Wohl was last insured. (Id. at 33).

On June 25, 2014, Mr. Wohl requested review of the ALJ's decision. (Id. at 364-73). Mr. Wohl died on October 31, 2014. (ECF No. 1). In a notice dated February 10, 2015, the Appeals Council denied the request for review. (Id.) On April 7, 2015, Plaintiff instituted this action. (Id.)

### B.    Factual Background

Mr. Wohl was born May 1, 1951. (Id. at 196). He completed two years of college and worked primarily as a technology/software marketer and manager. (Id. at 45-48, 231). Mr. Wohl alleged disability due to hepatitis C, cirrhosis and other severe liver disease, polyneuropathy caused by medical treatment, memory and cognitive loss, confusion and poor focus, arthritis joint and back pain, pulmonary disorder with shortness of breath, extreme fatigue, depression, and brain dysfunction. (Id. at 230).

Thomas Amrick, M.D., treated Mr. Wohl for his chronic hepatitis C infection from February 2001 through September 2012. (Id. at 609-729). From May 7, 2001 through December 2005, Mr. Wohl's hepatitis C infection was treated with Interferon Alfa, Ribavirin, Rebetron, and Pegasys injections, which were ineffective in improving the hepatitis C infection. (Id. at 634-56). Plaintiff contends that this treatment, specifically the Ribavirin, produced adverse side effects including fatigue and impaired concentration. (Plaintiff's Brief ("Pl. Br."), ECF No. 15 at 3 n.4;

Plaintiff's Reply Brief ("Pl. R.") ECF No. 20 at 2-3). Dr. Amrick's notes from this period reference Mr. Wohl's complaints of fatigue, mood swings, and irritability. (Tr. at 635-38, 649, 655, 685).

On October 24, 2013, Dr. Amrick completed a Liver Disease RFC Questionnaire. (Id. at 741-45). In the Questionnaire, Dr. Amrick indicated Mr. Wohl suffered from fatigue, general malaise, difficulty walking, muscle weakness, loss of manual dexterity, difficulty thinking/concentrating, psychological problems, abdominal pain, and chronic skin infections. (Id. at 741). Dr. Amrick stated he believed Mr. Wohl "frequently" experienced symptoms severe enough to interfere with attention and concentration. (Id. at 742).

In September 2013, Mr. Wohl underwent a neuropsychological examination with Jonathan Slyker, Ph.D. (Id. at 737-40). Dr. Slyker found Mr. Wohl's test results revealed "deficits in working memory, response inhibition, and nonverbal reasoning compared to likely functioning prior to medical illness." (Id. at 740). Additionally, Dr. Slyker found that Mr. Wohl's complaints of "intense neuropsychiatric symptoms immediately on initiation of antiviral treatment in 2001" were "quite typical." (Id.) He opined that Mr. Wohl's cognitive examination was "probably representative of his cognitive functioning dating back to the beginning of his [hepatitis C] treatment in 2001." (Id.)

During the supplemental hearing before the ALJ on March 5, 2014, Dr. Martin A. Fechner appeared as a medical expert. After reviewing the administrative record, Dr. Fechner testified that he did not believe Mr. Wohl's hepatitis C treatment was responsible for any diminished cognitive functioning. (Id. at 71-72). Dr. Fechner further stated that he did not believe Dr. Slyker, who first saw Mr. Wohl in 2013, could give a valid opinion of Mr. Wohl's cognitive functioning prior to his date last insured in 2008. (Id. at 72).

Mr. Wohl's wife, Deborah Wohl, testified at the November 13, 2014 hearing regarding Mr. Wohl's mental impairments. (Id. at 57-60). She also submitted written testimony to the Social Security Administration on April 23, 2012. (Id. at 246-53). Additionally, the record contains written testimony regarding Mr. Wohl's alleged cognitive impairments from Mr. Wohl's son, Jonathan Wohl, his daughter, Larissa Wohl, and a former co-worker, Samuel Platt. (Id. at 268-72). The lay testimony addressed Mr. Wohl's allegations of debilitating fatigue as well as memory and concentration issues. (Id.)

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential

standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.  Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a Plaintiff must show that he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the Plaintiff's age, education, and work experience, disability will be evaluated by the Plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The SSA follows a five-step sequential evaluation to determine whether a Plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the Plaintiff is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has a severe impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the Plaintiff's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy that the Plaintiff can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the Plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

### IV. DISCUSSION

#### A. Summary of the ALJ's Findings

At step one, the ALJ found that Mr. Wohl last met the insured status requirements of the SSA and had not engaged in substantial gainful activity from the alleged onset date of January 1, 2008 through his date last insured, December 31, 2008. (Id.) At steps two and three, the ALJ

6

found Mr. Wohl's impairments of severe hepatitis C, liver cirrhosis, obesity, and depression were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 4014, Subpart P, Appendix 1. (Id. at 24). The ALJ found Mr. Wohl's other alleged impairments, including sleep apnea, Bell's Palsy, cognitive impairments, neuropathy, chest pain, and ankle pain and swelling were nonsevere. (Id. at 25-26).

The ALJ concluded Mr. Wohl had the RFC to perform sedentary work as defined under 20 CFR § 404.1567(a), meaning Mr. Wohl could "only stand and walk for two hours and sit for six hours in an eight-hour workday. [Mr. Wohl] requires breaks from sitting for one to two minutes every hour. Further he can only occasionally crouch, bend, and climb stairs. He cannot work around heights, climb ladders or scaffolds, or crawl." (Id. at 28). The ALJ also stated that "based on fatigue and depression symptoms," Mr. Wohl was limited to semi-skilled work. (Id.)

To make this conclusion, the ALJ considered all of Mr. Wohl's symptoms and their consistency with the evidence. (Id. at 29). The ALJ found Mr. Wohl's statements of intensity, persistence and limiting effects of his impairments were not entirely credible because they were not supported by the medical evidence as a whole. (Id.) Specifically, the ALJ concluded that, although the hepatitis C treatment "could reasonably be expected to cause the alleged symptoms," including difficulty "remembering and completing tasks, concentrating, and following instructions," (id. at 29), the record did not support Mr. Wohl's allegations of disabling psychological symptoms and limitations. (Id. at 30). Moreover, the ALJ found Mr. Wohl's subjective complaints inconsistent with Mr. Wohl's daily activities and his noncompliance with treatment. (Id. at 29). The ALJ did not appear to consider lay witness testimony in determining Mr. Wohl's RFC.

At step four, the ALJ found Mr. Wohl was incapable of performing past relevant work as

a personal recruiter and a sales manager. (Id. at 31). At step five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform. (Id. at 32). The ALJ identified these jobs as: telephone solicitor, information clerk, emergency dispatcher, and charge account clerk. (Id.)

**B.    Analysis**

Plaintiff makes the following arguments in support of her contention that the ALJ's decision should be reversed: (1) the state agency failed to have the case reviewed by a psychologist or psychiatrist; (2) the ALJ's decision that Mr. Wohl did not have a medically determinable cognitive impairment was in error; (3) the ALJ failed to properly evaluate Mr. Wohl's subjective complaints of severe fatigue; and (4) substantial evidence did not support the ALJ's finding that there was other work in the national economy that Mr. Wohl could have performed. (Pl. Br. at 1). The Court addresses each of these arguments in turn.

### 1. The ALJ Failed to Obtain the Opinion of a Qualified Psychologist

The SSA requires that "in any case where there is evidence which indicates the existence of a mental impairment," the Commissioner must make "every reasonable effort to ensure" that "a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h). Plaintiff contends the Commissioner failed to obtain the opinion of a qualified psychiatrist or psychologist to evaluate Mr. Wohl's allegations of mental impairments, and therefore the ALJ's decision failed to comply with the SSA. (Pl. Br. at 14). To support this contention, Plaintiff cites to the ALJ's decision which states that "the case was only reviewed by single decision makers." (Id.; Tr. at 31).

Despite Plaintiff's contention and the ALJ's statement, the record appears to indicate that in addition to two doctors specializing in internal medicine, two state agency psychologists also

8

reviewed Mr. Wohl's medical evidence at the initial stage and upon reconsideration, in compliance with the SSA. On June 6, 2012, Herman Huber, Ph.D., a state agency psychologist, initially determined that after considering Listing 12.02, there was insufficient evidence to substantiate the presence of a disorder that met listing criteria. (Tr. at 84-90). Additionally, on October 15, 2012, during reconsideration of the claim, Brady Dalton, Ph.D., another state agency psychologist, reviewed Mr. Wohl's file, and after considering Listings 12.02 and 12.04, found there was insufficient evidence to determine that Mr. Wohl's symptoms met listing criteria. (Id. at 94-102).

However, despite the record, the ALJ failed to address the psychologists' evaluations. Thus, the Court cannot provide meaningful review of the ALJ's consideration of this evidence. On remand, the ALJ should obtain and review the opinion of a qualified psychiatrist or psychologist and provide a discussion of such evidence.

### 2. The ALJ Failed to Properly Evaluate Lay Evidence

At step two, the ALJ found that the record did not contain sufficient evidence from an acceptable medical source to establish the existence of a medically determinable cognitive impairment prior to the date last insured. (Tr. at 25). Plaintiff argues that ALJ failed to comply with Social Security Ruling ("SSR") 83-20 because the ALJ required contemporaneous medical evidence, did not credit Dr. Slyker's opinion, and did not address evidence from lay witnesses. (Id. at 16-20).

As a preliminary matter, Plaintiff's reliance on SSR 83-20 is misguided. "The purpose of . . . SSR 83–20, is to 'describe the relevant evidence to be considered when establishing the *onset date* of disability,' not whether disability exists." Zirnsak v. Colvin, 777 F.3d 607, 613 (3d Cir. 2014) (citing SSR 83–20, 1983 WL 31249, at *1 (1983) (emphasis added)). Whereas here,

Plaintiff argues the ALJ should have found the existence of a severe impairment, rather than a different onset date, SSR 83-20 is inapposite.[2]

Further, the ALJ did not err in giving little weight to Dr. Slyker's opinion. "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). Under the substantial evidence standard of review, the issue is whether sufficient evidence reasonably supports the ALJ's analysis. See Logan v. Colvin, No. 14-4571, 2015 WL 5722391, at *7 (D.N.J. Sept. 29, 2015) ("The role of the District Court in reviewing an ALJ's denial of disability benefits is not to reweigh the evidence presented, but instead to determine whether the ALJ made a decision supported by substantial evidence"). Here, the ALJ gave "great weight" to Dr. Fechner's opinion that Plaintiff's impairments "could not reasonably be expected to cause the sort of severe mental symptoms" Plaintiff described, rather than to Dr. Slyker's opinion that Plaintiff had deficits in working memory and nonverbal reasoning. (Tr. at 25). The ALJ supported her decision, noting: (1) Dr. Fechner had the opportunity to review the entirety of the medical record, (2) he was able to justify his findings based on analysis of Mr. Wohl's blood work, and (3) his opinion was consistent with examinations where Mr. Wohl reported improvement in his symptoms. (Id. at 31). Conversely, the ALJ discredited Dr. Slyker's report because it "occurred four and a half years after the date last insured." (Id. at 25).

---

[2] Even under the framework of SSR 83-20, the ALJ's decision was supported by substantial evidence. The Ruling provides that "How long [a] disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. *At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.*" SSR 83-20, 1983 WL 31249, at *3 (emphasis added). In this case, the ALJ called on Dr. Fechner, an impartial medical expert, to assist the ALJ in assessing Plaintiff's medical record. Therefore, even under the framework of 83-20, the ALJ's decision was supported by substantial evidence.

Accordingly, substantial evidence supported the ALJ's decision to attribute great weight to Dr. Fechner's opinion and little weight to Dr. Slyker's retrospective opinion.

However, while an ALJ is free to weigh the credibility of the evidence before her, "[s]he must give some indication of the evidence that [s]he rejects and [her] reason(s) for discounting that evidence." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). In this case, Plaintiff offered lay evidence from Mr. Wohl's family and former co-worker regarding Plaintiff's cognitive impairments. (Pl. Br. at 20). In Burnett v. Commissioner of Social Security, the Third Circuit held that the ALJ erred by not addressing the testimony of lay witnesses at all. 220 F.3d 112, 122 (3d Cir. 2000) ("Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him.") (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)). Here, the ALJ did not analyze or explain her consideration of the lay evidence provided by Plaintiff, and thus the Court cannot provide meaningful review of the ALJ's consideration of this evidence. On remand, the ALJ should evaluate the credibility of and the weight given to the lay evidence offered by Plaintiff. See Del Valle v. Comm'r of Soc. Sec., No. 12-7930 RMB, 2014 WL 546111, at *10 (D.N.J. Feb. 10, 2014) (remanding for the ALJ's failure to assess lay witness testimony).

### 3. The ALJ's Evaluation of Mr. Wohl's Subjective Complaints was Supported by Substantial Evidence

Plaintiff alleges that the ALJ failed to properly evaluate Mr. Wohl's subjective complaints of severe fatigue. When determining a claimant's RFC, the ALJ must consider the claimant's subjective complaints and the extent to which such subjective symptoms can reasonably be accepted as consistent with the objective medical and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(1). The ALJ "must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." Mason v. Shalala,

11

994 F.2d 1058, 1067 (3d Cir. 1993). However, in making such credibility determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference. See Metz v. Fed. Mine Safety & Health Review Comm'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference.").

This Court finds the ALJ's evaluation of the Plaintiff's subjective complaints was supported by substantial evidence. The ALJ considered Mr. Wohl's testimony at the administrative hearing, and limited Plaintiff's RFC to semi-skilled work based upon Plaintiff's subjective complaints of fatigue. (Tr. at 29-30). However, the ALJ also found that the description of the severity of Mr. Wohl's pain was not completely consistent with his daily activities and noncompliance with recommended treatment. (Id. at 29). The Regulations provide that an ALJ may use "any kind of medical or nonmedical evidence" in order to "satisfy the substantial evidence test, including the extent of Mr. Wohl's daily activities. See SSR 96-2p; 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929 (c)(3)(i) (providing the extent of a plaintiff's daily activities is a factor relevant to determining a plaintiff's symptoms). Moreover, "an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason." Vega v. Comm'r of Soc. Sec., 358 F. App'x 372, 375 (3d Cir. 2009) (citing SSR 96–7p). As the ALJ used appropriate factors to evaluate Mr. Wohl's credibility, the ALJ's evaluation of Plaintiff's credibility was supported by substantial evidence.

### 4. Substantial Evidence Did Not Support the ALJ's Finding That There was Other Work Mr. Wohl Could Have Performed in the National Economy

Plaintiff argues the ALJ's determination that there was work available in the national economy Mr. Wohl could have performed was not supported by substantial evidence. Specifically, Plaintiff argues the hypothetical question the ALJ posed to the VE did not account for all of Mr.

Wohl's limitations. A hypothetical question posed to a VE "must reflect all of a Plaintiff's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The Court finds that the hypothetical questions on which the ALJ relied did not reflect all of Mr. Wohl's impairments and cannot be considered substantial evidence.

Plaintiff contends the ALJ erred by failing to include any mention of Mr. Wohl's "moderate difficulties" with regard to his concentration, persistence, or pace. (Pl. Br. at 26). The ALJ asked the VE three questions in all. First, the ALJ asked the VE to assume a hypothetical person that can perform sedentary work and:

> Can walk and stand a total of two hours in an eight hour day; sit for six hours with one or two minute stretching every hour; he can lift ten pounds occasionally, less than ten pounds frequently; he cannot work around heights, climb ladders or scaffolding; no crawling; occasional bending and crouching; occasional stairs. (Tr. at 80).

The VE found this hypothetical person could perform Mr. Wohl's previous jobs. Second, the ALJ added the additional limitation that based on "fatigue and depression symptoms" the hypothetical person is limited to semi-skilled work. (Id.). The VE found that this person could not perform Mr. Wohl's previous jobs, but that there are jobs existing in significant numbers in the national economy that this person could perform. (Id. at 80-82). Third, the ALJ asked if there would be work for someone who was the "same as [hypothetical person] number one but based on severe fatigue he is unable to focus more than 50 percent of an eight hour day." (Id. at 82). The VE said that there would be no jobs in the national economy for that hypothetical person. (Id.). The ALJ concluded that based upon the second hypothetical question, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (Id. at 32).

At step two, the ALJ found that Plaintiff had moderate difficulties in concentration, persistence, and pace. (Id. at 27). If there is a finding of "moderate difficulties" with regard to

13

concentration, persistence, or pace there must be some mention of these limitations in the hypothetical question. See Green v. Colvin, No. 14-1942, 2016 WL 1696797 at *3 (E.D. Pa. Apr. 27, 2016) (finding an ALJ's RFC evaluation and hypothetical question were deficient because they failed to incorporate the ALJ's own findings that the Plaintiff had mild limitations with concentration, persistence, or pace). While there is no specific language that satisfies this requirement, some mention is necessary. See, e.g., McDonald v. Astrue, 293 F. App'x. 941, 946 (3d Cir. 2008). The ALJ did not specifically include Mr. Wohl's moderate difficulties with regard to concentration, persistence, and pace in the second hypothetical question posed to the VE, upon which he ultimately relied.[3] Because the ALJ failed to include all of Plaintiff's credibly established limitations in the hypothetical used to support her step-five determination, it was not supported by substantial evidence. See Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). Thus, on remand, the ALJ must account for all of Plaintiff's recognized mental limitations in her questions to the VE.

## V. CONCLUSION

For the foregoing reasons, the Court affirms in part and vacates in part the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

Date: April 5, 2017

**CLAIRE C. CECCHI, U.S.D.J.**

---

[3] Although the third hypothetical question included limitations with regard to concentration, the ALJ appears to have disregarded the VE's answer to that hypothetical. The VE told the ALJ that there would be no work in the national economy for a hypothetical person based on this question. (Id. at 82). In concluding that Mr. Wohl could perform jobs in the national economy, the ALJ did not explain why she disregarded the VE's answer to the third hypothetical.